### PALMER v. CURNEN et al.

(Circuit Court, S. D. New York. January 10, 1898.)

PATENTS—ANTICIPATION—INFRINGEMENT—HAMMOCKS.

The Palmer patent, No. 272,311, for improvements in hammocks, was anticipated by various prior patents as to claims 4 and 8, which relate, respectively, to the construction of the suspension cords and the spreader, if these claims are to be broadly construed; and, if they are valid for the specific devices covered, *held*, that they are not infringed.

This was a suit in equity by Isaac E. Palmer against Cornelius C. Curnen and Edmund Steiner for alleged infringement of a patent for improvements in hammocks.

Edwin H. Brown, for complainant.
Benedict & Morsell and Henry M. Brigham, for defendants.

TOWNSEND, District Judge. This is a suit for an injunction and accounting by reason of the alleged infringement of patent No. 272,311, granted February 13, 1883, to I. E. Palmer, for hammocks. The claims alleged to be infringed are the fourth and the eighth, which are as follows:

"(4) The combination, with a hammock, a stretcher bar, arranged beyond the end thereof, and a suspension stirrup or device of suspension cords converging from the hammock toward the stretcher, and attached to the stretcher at two or more points, and suspension cords converging from the stretcher toward the stirrup or suspension device, and attached to said device, substantially as described."

"(8) The spreader, D, provided with heads, f, substantially as and for the purpose described."

The defenses are lack of patentable novelty, and denial of infringement.

Complainant admits that the special construction of defendants' stretcher and stirrup is not embodied in complainant's exhibit "Infringing Hammock." The question at issue, therefore, is confined to the construction of the suspension cords and the spreader. Travers patent, No. 221,754, shows a hammock suspended by cords attached at numerous points across the ends thereof, the suspension cords being confined at any desirable number of points to a stretcher bar located outside of and beyond the ends of the hammock, and converging to a stirrup or suspension device. If the suspension cords of the Travers hammock be so shifted as to pass them through or attach them to the stretcher in groups of two or more, it embodies the construction covered by said fourth claim, independent of the specific devices therein. The patent in suit is practically for two Travers hammocks. The Craft patent, No. 142,327, and Hicks hammocks, Nos. 1, 2, and 3, show a stretcher, suspension cords, and suspension device. Patent No. 271,510, granted to complainant herein in 1883, includes all that is embraced in said fourth claim, when construed broadly. Under a broad

construction of a spreader,—i. e. a stick or rod having ends sufficiently blunt to prevent the ends from sticking through the pockets,—the spreader device is anticipated by the Forbusch patent, No. 33,678; Woods patent, No. 68,927; Leycester patent, No. 209,275, which has a spreader the ends of which are held by eyelets, like that of defendants; Travers patent, No. 221,754; Palmer patent, No. 270,836; and in the Wells patent, No. 261,796. The spreader of the Forbusch patent, No. 33,679, specifically meets the construction of the eighth claim of the patent in suit, and adapts the spreader for the same use as that of the spreader of the patent in suit. Also defendants' exhibit Vendt hammock of 1878 shows a construction precisely like that of defendants' spreader, and eyelets for holding its ends; the only difference being that defendants' spreader is of wire, while that of the Vendt hammock is an ordinary stick of wood.

It is difficult to conceive of patentable invention in a mere spreader at the date of the patent in suit, in view of the great variety and extensive use thereof, in the ordinary swing boards, in laths with furcated ends, and curved sticks with hooks at intervals for holding the suspension cords of the ordinary hemp hammock either singly or in groups, to suit the fancy of the occupant. It is clear, however, that the mere bending over of the ends of a wire to prevent its punching through the fabric would not involve invention. Furthermore, the spreader found in defendants' hammock does not have the specific construction of the spreader shown and described in complainant's hammock, and does not infringe the said eighth claim, inasmuch as it does not have any eye or loop at the end, bent at a right angle to the axis of the spreader. Defendants' spreader is provided with hooks at the end, adapted to take into eyelets, and thus hold the hammock extended, which construction is intended not to bear against the fabric, which would, if in contact therewith, push through and destroy the fabric by constant rubbing and wearing.

The only evidence favorable to complainant's device is its popularity. This rests on two features,—"triangular suspension," so called, and adaptability for use by two persons at the same time. This triangular suspension, whereby the strain is referred from the two ends of the stretcher to a single point of support, is old in the general field of practical arts. The experiments at the hearing satisfied me that it was not of any practical value to prevent the uptilting of the hammock. As is stated by defendants' expert Knight, the "uptilting of these hammocks depends wholly upon the tension under which the hammocks are strung up, and the distance laterally from a right line through the points of suspension, at which the person or weight is applied." But it looks as though it were steadier, and the public prefer it for that reason. That the devices in suit are practically desirable in hammocks built for two persons, is immaterial upon the question of patentable novelty, for it is merely the aggregation of two hammocks of the prior art. If the patent in suit can be sustained for the specific devices covered by the claims in suit, the defendants do not infringe.